**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Won Sang Yeo,<br><br>        Plaintiff,<br>  v.<br><br>Reception House New York Inc., Picnic World Corp., Jong Hwan No, Song Mi Kim, and Rebekah Kim,<br><br>        Defendants, | Index No. 26-cv-2973<br><br><br><br>**COMPLAINT**<br><br><br><br><br><br>**JURY DEMANDED** |

Plaintiff Won Sang Yeo ("Plaintiff"), by and through his undersigned counsel, Ryan Kim Law, P.C., as and for his Complaint in this action against Defendants Reception House New York Inc., Picnic World Corp., Jong Hwan No, Song Mi Kim, and Rebekah Kim (collectively, "Defendants"), hereby allege as follows:

## NATURE OF THE CLAIMS

1. Defendants subjected Plaintiff, who worked as a server and event worker, to numerous violations of federal and state laws during his employment, including: (a) failure to pay minimum wages in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 et seq. and the New York Labor Law ("NYLL") § 650 et seq.; (b) unlawful retention of employee gratuities in violation of FLSA § 203(m)(2)(B) and NYLL § 196-d; (c) failure to pay for all straight-time wages in violation of NYLL § 191; (d) failure to pay spread-of-hours compensation; (e) failure to provide accurate wage notices in violation of NYLL §§ 195(1) and (2); and (f) failure to provide wage statements in violation of NYLL § 195(3).

1

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA.

3. The Court has supplemental jurisdiction over Plaintiff's related claims arising under State law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District, namely Queens, New York.

## PARTIES

5. Plaintiff Won Sang Yeo is an adult resident of the State of New York.

6. Plaintiff and was employed by Defendants as a server, banquet worker, event worker, and related non-exempt employee from approximately April 2021 through December 31, 2025.

7. At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of all applicable statutes.

8. Defendant Reception House New York Inc. ("Reception House") is a New York Corporation organized under the laws of the State of New York.

9. Reception House is an "enterprise engaged in interstate commerce" within the meaning of the FLSA that owned, operated, and managed an event venue and hospitality business located in Flushing, New York.

10. Reception House has employees engaged in commerce or the production of goods and commerce and handling, selling, or otherwise working on goods and materials that have been moved in or produced for commerce by any person.

11.     Upon information and belief, Reception House has an annual gross volume of sales in excess of $500,000.

12.     Defendant Picnic World Corp. ("Picnic World") is a New York Corporation organized under the laws of the State of New York.

13.     Picnic World is an "enterprise engaged in interstate commerce" within the meaning of the FLSA that owned, operated, and managed Sansookabsan II BBQ ("Sansookabsan II") restaurant located in Flushing, New York.

14.     Picnic World has employees engaged in commerce or the production of goods and commerce and handling, selling, or otherwise working on goods and materials that have been moved in or produced for commerce by any person.

15.     Upon information and belief, Picnic World has an annual gross volume of sales in excess of $500,000.

16.     Upon information and belief, Reception House and Picnic World operated in an interrelated manner and shared common ownership, management, policies, operational control, equipment storage, event preparation logistics, food preparation operations, transportation resources, and employees.

17.     Upon information and belief, Defendants utilized Sansookabsan II as part of the event operation process, including for storage and retrieval of event equipment, food preparation, supply coordination, transportation logistics, and staffing operations associated with Reception House events.

18.     At all relevant times, Defendant Jong Hwan No ("No") was an owner, officer, principal, manager, and/or agent of Reception House and Picnic World.

19.    Upon information and belief, No exercised operational control over the businesses, employees, payroll practices, compensation policies, schedules, and working conditions.

20.    At all relevant times, No possessed authority to hire and fire employees, supervise employees, establish wage and payroll practices, and control significant aspects of Defendants' day-to-day operations.

21.    At all relevant times, Defendant Song Mi Kim was a director, manager, supervisor, and/or agent of Defendants who exercised operational control over employees, including scheduling, staffing, compensation, payroll practices, and event operations.

22.    At all relevant times, Defendant Rebekah Kim was a director, manager, supervisor, and/or agent of Defendants who exercised operational control over employees, including scheduling, staffing, compensation, payroll practices, and event operations.

23.    At all relevant times, Defendants acted directly or indirectly in the interest of one another in relation to Plaintiff and constituted "employers" within the meaning of the FLSA and NYLL.

## **FACTUAL ALLEGATIONS**

24.    In or about April 2021, Plaintiff Won Sang Yeo was hired by Defendants to work at Reception House located at 167-17 Northern Blvd., Flushing, New York 11358.

25.    Plaintiff worked for Defendants until approximately December 31, 2025.

26.    Defendants employed Plaintiff to work during weddings, parties, banquets, church events, corporate events, sweet sixteen parties, birthday celebrations, and related functions.

27.    Plaintiff regularly worked weekend events, primarily on Saturdays and Sundays.

28.    Plaintiff's work responsibilities extended substantially beyond the event hours themselves.

29.    For many events, Plaintiff and other workers were required to report in the morning to retrieve event equipment, tables, supplies, beverages, food items, and other materials from affiliated locations, including Sansookabsan, before transporting such materials to event locations.

30.    Plaintiff and similarly situated workers performed substantial pre-event and post-event work, including loading and unloading equipment, transporting event materials, setting up tables and buffet stations, preparing event spaces, arranging decorations and supplies, cleaning event sites, disposing of garbage, breaking down event equipment, returning supplies, and returning company vehicles following the completion of events.

31.    Plaintiff also performed work at off-site events and travel-related functions, including events in Pennsylvania, New Jersey, Long Island, and elsewhere.

32.    For larger weddings, off-site events, church events, corporate functions, and events involving transportation and setup obligations, Plaintiff regularly worked substantially longer shifts extending twelve (12) hours or more from the beginning of work-related duties through the completion of cleanup, breakdown, return travel, unloading, and vehicle return obligations.

33.    Throughout Plaintiff's employment, Defendants exercised substantial control over Plaintiff's work assignments, schedules, staffing arrangements, event preparation duties, transportation logistics, and operational responsibilities associated with events.

34.    Despite shifts exceeding ten (10) hours and extending twelve (12) hours or more, Defendants failed to provide Plaintiff with spread-of-hours compensation as required under NYLL.

35.    Throughout Plaintiff's employment, Defendants failed to provide Plaintiff with proper wage notices at the time of hiring or thereafter.

36.    Defendants likewise failed to furnish accurate wage statements or paystubs reflecting hours worked, hourly rates, gratuities, deductions, or other legally required information.

37.    Instead, following events, managers and supervisors distributed cash payments to employees individually through envelopes.

38.    Defendants did not inform employees of their actual hourly wage rates, compensation calculations, payroll methodology, or any lawful pay structure.

39.    When Plaintiff inquired regarding compensation practices, management informed Plaintiff that the payments represented distributed "tips" and that there was allegedly no separate "house pay."

40.    Upon information and belief, Defendants retained, controlled, managed, and distributed gratuities and/or service charges collected through Defendants' business operations.

41.    Plaintiff was not provided sufficient information to determine whether gratuities and/or service charges were properly distributed.

42.    Defendants failed to maintain accurate and complete payroll and timekeeping records as required by law.

43.    Defendants knowingly, intentionally, and willfully maintained unlawful payroll and compensation practices, including paying employees through undisclosed cash

distributions, failing to provide wage notices and wage statements, failing to maintain accurate payroll records, concealing the manner in which gratuities and/or service charges were collected and distributed, and failing to disclose employees' actual rates of pay and compensation structure.

44.    Defendants knew, or showed reckless disregard for whether, their payroll and compensation practices violated the FLSA and NYLL.

45.    Defendants nevertheless continued these practices throughout Plaintiff's employment.

46.    Throughout Plaintiff's employment, Defendants and/or their management unlawfully retained portions of the tips earned by Plaintiff.

47.    Defendants controlled and manipulated the distribution of tips rather than allocating the full amounts actually earned by employees.

48.    To the extent Defendants sought to claim a tip credit toward their minimum wage obligations, Defendants were not entitled to such credit because they unlawfully retained portions of gratuities earned by Plaintiff and failed to comply with the notice and recordkeeping requirements of federal and state law.

49.    Plaintiff was not permitted to handle, calculate, or verify the tips they earned through events. The amount of tips collected each day or event was not disclosed to Plaintiff, and only Defendants had access to the POS records and tip information. As a result, Plaintiff had no knowledge of the total amount of tips earned on any given day or week.

50.    New York Labor Law also requires an employer to issue written notice which is signed by the employee receiving tipped minimum wage in order to take tip credit toward meeting minimum wage.

51.     At all relevant times, Defendants failed to provide any written notice concerning intention to take a tip credit.

52.     As such, Defendants were obligated to pay Plaintiff the standard hourly minimum wage rate and not any reduced minimum wage through the application of a tip credit.

53.     Defendants intentionally concealed their compensation and gratuity practices by failing to provide employees with payroll records, tip pool records, wage notices, wage statements, or documentation reflecting how gratuities and/or service charges were collected, calculated, allocated, and distributed.

54.     Defendants exclusively controlled the tip records, denied employees access to tip calculations, and distributed tips without transparency. Upon information and belief, Defendants retained portions for their own benefit.

55.     Pursuant to 29 U.S.C. § 203(m)(2)(B), an employer is prohibited from keeping any portion of employees' tips, including through redistribution to non-tipped employees, managers, or supervisors, regardless of whether the employer takes a tip credit. Defendants' conduct constitutes an independent violation of the FLSA.

## FLSA § 203(m)(2)(B) and New York Labor Law § 196-d Violations

56.     As alleged above, during Plaintiff's employment, Defendants unlawfully retained tips and wages that were earned by and owed to Plaintiff, in violation of FLSA § 203(m)(2)(B) and NYLL § 196- d.

57.     As such, Defendants are required to disgorge and pay back all the gratuities and wages they unlawfully retained to Plaintiff, along with liquidated damages and interest.

## Wage Notice and Wage Statement Violations

8

58.   Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL. Defendants failed to provide Plaintiff with proper paystubs reflecting the actual number of hours he worked or tip credit claimed for each pay period.

59.   At all relevant times, Plaintiff never received a wage notice from Defendants.

60.   In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff at the beginning of his employment with Defendants.

61.   In failing to provide any wage statements and notices, Defendants have failed to comply with the law in a manner that entails concrete harm to an interest identified by the New York State legislature.

62.   Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff. Defendants' conduct actually harmed Plaintiff. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay deprived Plaintiff of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doings, and necessitated the current litigation to vindicate Plaintiff's rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

63.   Had Defendants provided any wage statements to Plaintiff which accurately listed the total number of hours Plaintiff actually worked and his proper pay rates, as required by law, Defendants would have had to either (a) increase Plaintiff's wages to correspond to

the hours he actually worked or (b) forthrightly acknowledge, by way of the wage statement, that Plaintiff's wages did not correspond to the hours the employees actually worked. Either possibility would have allowed Plaintiff to vindicate his rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

64.     The failure to provide any wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff. This delayed payment caused Plaintiff to struggle to pay bills and other debts.

65.     Defendants' failure to provide accurate wage statements and notices deprived Plaintiff of the ability to verify whether he received all gratuities and wages owed, obscured Defendants' unlawful tip retention practices, and delayed Plaintiff's ability to detect and remedy wage violations. This informational and economic harm constitutes a concrete injury sufficient for Article III standing.

66.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements.

67.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute,

entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

68.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023).

69.     It is clear that Defendants' failure to provide Plaintiff with any wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants were supposed to submit to the IRS on behalf of Plaintiff. That, in turn, would have increased Plaintiff's entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

70.     Accordingly, by failing to comply with their wage notice requirements, Defendants owe Plaintiff $50.00 per day for every day such notice was not provided, up to $5,000.00.

71.     In addition, Defendants failed to furnish Plaintiff with accurate wage statements and/or pay stubs, that included, *inter alia*, his hours worked, any minimum wage allowances that were applied, and the correct amount of tip wages he should have and were legally owed.

72.     By failing to comply with their wage statements obligations, Defendants owe Plaintiff $250.00 for each violation, up to $5,000.00.

## FIRST CLAIM FOR RELIEF
### (Failure to Pay Minimum Wages in Violation of the FLSA)

73.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

74.     The FLSA requires covered employers, such as Defendants, to pay all non-exempt employees the prevailing minimum wage for all hours worked. Plaintiff was not exempt from the requirement that Defendants pay them the prevailing minimum wage under the FLSA.

75.     Defendants did not pay Plaintiff the prevailing minimum wage for all hours worked for Defendants.

76.     As a result of Defendants' failure to pay Plaintiff the prevailing minimum wage for all hours worked, Defendants violated the FLSA.

77.     The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

78.     As a result of Defendants' willful actions, Plaintiff is entitled to recover unpaid minimum wages for up to three (3) years prior to the filing of this lawsuit.

79.     Plaintiff seeks damages in the amount of all of his unpaid wages, liquidated damages as provided by the FLSA for minimum wage violations, interest, attorneys' fees, and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Unlawful Retention of Gratuities Under the FLSA)

80.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

81.    Pursuant to 29 U.S.C. § 203(m)(2)(B), the FLSA prohibits an employer from keeping tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether the employer takes a tip credit.

82.    At all relevant times, Defendants unlawfully retained gratuities from Plaintiff in violation of the FLSA.

83.    Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants the amount of unlawfully retained gratuities, liquidated damages, interest, and attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF
### (Failure to Pay Minimum Wage in Violation of the NYLL)

84.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

85.    The NYLL requires covered employers, such as Defendants, to pay non-exempt employees the prevailing minimum wage for all hours worked. Plaintiff was not exempt from the requirement that Defendants pay them the prevailing minimum wage under the NYLL.

86.    At all relevant times, Defendants did not pay Plaintiff the prevailing minimum wage for all hours worked for Defendants.

87.    As a result of Defendants' failure to pay Plaintiff the prevailing minimum wage for all hours, Defendants violated the NYLL.

88.    The foregoing conduct of Defendants constitutes willful violations of the NYLL.

89.    Defendants' violations of the NYLL have significantly damaged Plaintiff, entitle him to recover the total amount of his unpaid minimum wages, an additional amount in liquidated damages, interest, and attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF
### (Unlawful Retention of Gratuities Under the NYLL)

90.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

91.    NYLL § 196-d bars an employer from retaining "any part of a gratuity or of any charge purported to be gratuity[.]"

92.    At all relevant times, Defendants unlawfully retained gratuities from Plaintiff in violation of NYLL § 196-d.

93.    Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants the amount of unlawfully retained gratuities, liquidated damages, interest, and attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### (Failure to Pay Wages for All Hours Worked/Straight Time Wages in Violation of the NYLL)

94.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

95.    Defendants failed to compensate Plaintiff for all hours worked.

96.    Throughout Plaintiff's employment, Defendants failed to pay Plaintiff all earned wages for work performed during events, including work associated with setup, preparation, cleanup, breakdown, transportation, and travel-related duties.

14

97. Defendants knowingly and willfully failed to pay Plaintiff all straight-time wages owed in violation of the NYLL.

98. Due to Defendants' NYLL violations, Plaintiff is entitled to recover unpaid straight time wages, liquidated damages, interest, and attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**
**(Failure to Pay Spread-of-Hours in Violation of the NYLL)**

99. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

100. Defendants willfully failed to pay Plaintiff additional compensation of one hour's pay at the basic minimum hourly wage for each day during which Plaintiff worked more than ten (10) hours.

101. By Defendants' failure to pay Plaintiff spread-of-hours pay, Defendants willfully violated the NYLL Article 19, § 650, et seq., and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. §§ 137-1.7, 3.10, and 146-1.6.

102. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff a required spread-of-hours pay for all relevant times herein.

**SEVENTH CLAIM FOR RELIEF**
**(Failure to Issue Wage Notices in Violation of the NYLL)**

103. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

104. NYLL §§ 195(1) and (2) require employers to issue wage notices to employees at the time of their hiring or when any changes to the information required to appear on wage notices occur.

105.    Defendants unlawfully failed to issue appropriate wage notices to Plaintiff.

106.    Defendants' failure to issue wage notices deprived Plaintiff of critical information about his wage rates, hours, and allowances, hindering his ability to detect and challenge unlawful underpayment in a timely manner.

107.    Defendants' lack of proper notice contributed directly to wage violations, exacerbating the financial harm Plaintiff suffered.

108.    As a result of Defendants' failure to provide the required wage notices, Plaintiff is entitled to $50.00 per day for every day such wage notice was not provided, up to $5,000.00 per person, plus interest and attorneys' fees and costs.

## EIGHTH CLAIM FOR RELIEF
### (Failure to Furnish Wage Statements/Pay Stubs in Violation of the NYLL)

109.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

110.    NYLL § 195(3) requires employers to furnish employees with wage statements, *i.e.*, pay stubs, that include, *inter alia*, hours worked, and any minimum wage allowances that are applied.

111.    During the NYLL Period, Defendants unlawfully failed to issue appropriate wage statements to Plaintiff.

112.    Due to Defendants' NYLL violations, Plaintiff is entitled to $250.00 per violation up to $5,000.00, plus interest and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A.      Declare that the practices complained about herein are unlawful under applicable federal and state law;

B.      Award Plaintiff all unpaid wages and unlawfully retained gratuities;

C.      Award Plaintiff an additional equal amount as liquidated damages because Defendants' violations were willful and/or without a good faith basis;

D.      Determine the damages sustained by Plaintiff as a result of Defendants' violations of the NYLL and/or its regulations, and award those damages against Defendants and in favor of Plaintiff, plus such pre-judgment and post-judgment interest as may be allowed by law;

E.      Award Plaintiff an additional amount as liquidated damages pursuant to the NYLL because Defendants' violations were willful and/or without a good faith basis;

F.      Award Plaintiff his reasonable attorneys' fees and costs and disbursements in this action including, but not limited to, any accountants' or experts' fees;

G.      Grant Plaintiff such other and further relief that the Court deems just and proper.


## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues.

Dated: May 19, 2026

   /s/ Ryan Kim
Ryan J. Kim

Ryan J. Kim, Esq.
Ryan Kim Law, P.C.
222 Bruce Reynolds Blvd. Suite 490
Fort Lee, NJ 07024
ryan@RyanKimLaw.com

17